UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND RICHARD WHITALL, G43090,<br>Plaintiff,<br>v.<br>VAUN C. MUNK, et al.,<br>Defendant(s). | Case No. 20-cv-03415-CRB (PR)<br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br>(ECF Nos. 16 & 20 (21-2)) |

Plaintiff Raymond Richard Whitall, a prisoner at Salinas Valley State Prison (SVSP) and frequent litigant in federal court, seeks damages and injunctive relief under 42 U.S.C. § 1983 based on his claim that prison dentists have been deliberately indifferent to his jaw pain by failing to properly treat him for over two years and that reviewing/supervising officials similarly have been deliberately indifferent by denying his health care grievances and appeals and/or by failing to intervene. Plaintiff also seeks damages and injunctive relief under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (RA), based on his claim that he has been excluded from prison services and activities by reason of his eating impairment disability and that the California Department of Corrections and Rehabilitation (CDCR) improperly has denied him the reasonable accommodation he requested to avoid exclusion on the basis of his disability, and invokes this court's supplemental jurisdiction under 28 U.S.C. § 1367 to bring related state law claims.

On September 4, 2020, the court found plaintiff's claims arguably cognizable, when liberally construed, and ordered the marshal to serve the following named defendants: treating dentists Dr. V. Munk and Dr. R. Chuapoco; reviewing dentists Dr. A. Major and Dr. T. Ng; appeals reviewers S. Sawyer, S. Gates, D. Caldwell, K. Jemison, B. Omosaiye and S. Rivera; and Warden M. Atchley and CDCR.

Currently before the court for decision is defendants' motion for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Defendants also claim that they are entitled to qualified immunity. Also before the court for decision is plaintiff's motion for a preliminary injunction requiring defendants to provide him treatment/care rejected by his prison dentists and reviewing/supervising officials. The parties have filed responses and replies to both motions.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed:

During the relevant period of January 2018 to December 2019, plaintiff was treated by two staff dentists at SVSP: Dr. V. Munk and Dr. R. Chuapoco. Both dentists provided general dental care to prisoners at SVSP. Munk Decl. (ECF No. 20-5) ¶¶ 1, 2; Chuapoco Decl. (ECF No. 20-3) ¶¶ 1, 2.

A.   Plaintiff's Initial Request for a New Mouth Guard

On January 26, 2018, Dr. Chuapoco saw plaintiff for a comprehensive dental examination. Mot. for Prelim. Inj. (MPI) (ECF. No. 16) Ex. A at 1; Wu Decl. (ECF No. 20-10) Ex. B at 43. Plaintiff claimed that his jaw hurt when he opened and closed it and that he needed a new mouth guard. Id.[1] Although plaintiff had a soft mouth guard, he complained that it did not fit right and was abrading his tongue. Id.; see Wu Decl. Ex. B at 23. Dr. Chuapoco conducted a comprehensive dental examination and noted a diagnosis of mild periodontitis and temporomandibular joint dysfunction. MPI Ex. A at 1; Wu Decl. Ex. B at 43.[2]

Dr. Chuapoco created a treatment plan for plaintiff that included a scaling and root planning procedure (i.e., a "deep cleaning") to treat his periodontitis and the construction of a hard night guard to stabilize his bite and alleviate his TMD symptoms, including his jaw pain.

---

[1] A mouth guard is also known as an "occlusal guard," "occlusal splint" or "night guard." Chuapoco Decl. ¶ 9.

[2] The temporomandibular joints are two joints that connect a person's lower jaw to their skull. Munk Decl. ¶ 10. Temporomandibular joint disorders (TMD or TMJ) are disorders of the temporomandibular joints and associated muscles and nerve systems. TMD can be caused by any problem that prevents the temporomandibular joints from working properly. Id.

Chuapoco Decl. ¶ 10.  Dr. Chuapaco scheduled plaintiff's deep cleaning over several sessions to accommodate plaintiff's pain and discomfort, but plaintiff complained that it would take too long to get his mouth guard and refused the deep cleaning procedure.  Id.  ¶¶ 10, 11.

Dr. Chuapoco explained that CDCR policy requires a dental cleaning before a new mouth guard is fitted.  Id. ¶ 11.  Specifically, sections 3.3.2.6 and 3.3.5.3 of the Health Care Department Operations Manual (HCDOM) provide that periodontitis treatments generally should be prioritized over rehabilitative care, such as the construction of an occlusal guard.  See Munk Decl. Ex. B.  This serves dual medical purposes.  Id. ¶ 14; Chuapoco Decl. ¶ 13.  First, periodontitis can cause bone or tooth loss when left untreated.  Munk Decl. ¶ 16; Chuapoco Decl. ¶ 14.  Second, completing a deep cleaning ensures that a prisoner-patient's teeth and gums are healthy with no underlying decay, which in turn helps safeguard the efficacy and longevity of the prisoner-patient's dental prostheses (in this case, occlusal guard).  Munk Decl. ¶ 17; Chuapoco Decl. ¶ 15.

On January 28, 2018, plaintiff filed a health care grievance requesting a new mouth guard without a dental cleaning.  Abernathy Decl. (ECF No. 20-2) Ex. B at 3, 5.

On February 9, 2018, Dr. Munk examined plaintiff in response to his health care grievance.  Wu Decl. Ex. B at 42.  Dr. Munk confirmed Dr. Chuapoco's diagnosis of TMD and periodontitis, Munk Decl. ¶¶ 10, 11, and explained to plaintiff that he was required to complete a deep cleaning before he could be fitted for a new mouth guard, id. ¶ 18.  Plaintiff complained that it would take too long and insisted that he needed a new mouth guard immediately.  Id.  Dr. Munk referred plaintiff' case to the Dental Authorization Review (DAR) Committee for possible approval to deviate from CDCR policy.  Id.  Dr. Munk also scheduled a follow-up appointment to begin plaintiff's deep cleaning or, if the DAR Committee approved plaintiff's request, to fit him for an occlusal guard.  Id. ¶¶ 18, 19.

On February 20, 2018, Omosaiye conducted the Institutional Level Review of plaintiff's health care grievance and denied it on grounds that no intervention was necessary before the DAR Committee ruled on plaintiff's request.  MPI Ex. P at 1–2.  Gates denied the grievance at the final Headquarters Level Review on May 31, 2018 on grounds that the DAR Committee had denied plaintiff's request.  Id.

3

On April 3, 2018, Dr. Munk saw plaintiff for the scheduled follow-up examination and cleaning or fitting, and informed plaintiff that the DAR Committee had denied his request to bypass a deep cleaning. Wu Decl. Ex. B at 40; MPI Ex. V. Because plaintiff complained of sharp, stabbing pain in his jaws at night, Dr. Munk offered to prescribe pain medication to alleviate his pain until he could get his occlusal guard. Munk Decl. ¶ 21. Plaintiff protested that a deep cleaning would be too painful and that it would take too long to obtain his occlusal guard, became agitated and refused the prescription for pain medication and a deep cleaning. Id. ¶ 22. Dr. Munk again explained to plaintiff that he would not be able to receive a new mouth guard if he refused the deep cleaning. Id.

On April 22, 2018, plaintiff filed a health care grievance regarding his April 3, 2018 encounter with Dr. Munk and alleging a refusal to treat. Abernathy Decl. Ex. C at 4–6. Omosaiye denied the grievance at the Institutional Level Review on May 13, 2018, id. at 1–3, and Gates denied it at the Headquarters Level Review on August 29, 2018, id. at 8–9.

On June 5, 2018, plaintiff filed a new health care grievance again requesting a fitting for a new mouth guard. Wu Decl. Ex. B at 6. And on June 9, 2018, he filed a related health care grievance protesting Dr. Munk's response to the June 5, 2018 request, in which Dr. Munk deemed plaintiff's June 5, 2018 request "granted" and noted that plaintiff would be scheduled for a deep cleaning before being fitted for a mouth guard. Id. at 20. Both grievances were denied at the institutional and headquarters levels of review.

B.   Plaintiff's Subsequent Requests for Jaw Surgery

On May 31, 2018, plaintiff saw Dr. J. Luque, an outside oral and maxillofacial surgeon, for a consultation regarding his TMD. MPI Ex. C at 1–4; Wu Decl. Ex. B at 9–12. Dr. Luque confirmed Dr. Chuapoco and Dr. Munk's TMD diagnosis, id. at 12, and recommended a radiological interpretation, physical therapy, an occlusal splint and "possible" surgery of plaintiff's left temporomandibular joint, id. at 9, 12. Dr. Luque also noted that he would like to see plaintiff for a follow-up visit in "3 weeks." Id. at 9. Upon plaintiff's return to SVSP that same day, medical staff noted that plaintiff "must be seen within 14 days" and entered Dr. Luque's recommendations into plaintiff's medical record. MPI Ex. H.

4

On June 1, 2018, Dr. Munk saw plaintiff to follow up on his TMD consult with Dr. Luque. Wu Decl. Ex. B at 39. Plaintiff stated that he wanted no further treatment until his TMD was resolved. Id. According to Dr. Munk, he warned plaintiff that curative treatments for TMD generally are not permitted under CRCD policy because TMD often fails to respond to treatment so addressing the symptoms frequently is the most effective course of care. Munk Decl. ¶¶ 10, 25. Dr. Munk reminded plaintiff that an occlusal guard could alleviate his pain, but plaintiff would have to withdraw his refusal of treatment and complete a dental cleaning. Id. ¶ 25. Plaintiff again refused a cleaning and insisted on surgery. Id. Dr. Munk agreed to present Dr. Luque's recommendations to the DAR Committee for consideration. Id.; Wu Decl. Ex. B at 39.

On June 20, 2018, the DAR Committee approved the recommendation for a follow up exam with a radiologist. Am. Ng Decl. (ECF No. 22) ¶ 7; Ng Decl. Ex. A (ECF No. 20-8) at 7. The DAR Committee did not approve the recommendation for TMD surgery because "HCDOM excludes dental services or treatment for conditions that are not readily amenable to treatment, such as TMD." Am. Ng Decl. ¶ 7.

On July 19, 2018, plaintiff received CT imaging of his jaw, which the radiologist interpreted as showing arthritic changes at plaintiff's left temporomandibular joint. MPI Ex. D.

On July 30, 2018, Dr. Munk saw plaintiff for a dental cleaning appointment after back-to-back health care services requests for an occlusal guard. Wu Ex. B at 37; Munk Decl. ¶¶ 26, 27. But plaintiff cancelled the appointment and refused treatment despite Dr. Munk's admonition that if his periodontitis was left untreated it could lead to infection spread, pain, and bone or tooth loss. Wu Ex. B at 37; Munk Decl. ¶ 27.

On August 21, 2018, plaintiff filed a health care grievance complaining of the denials of his prior health care grievances and requests and the failure of reviewing officials to intervene in his dental care needs. Abernathy Decl. ¶ 18 & Ex. D. No intervention was deemed necessary at the Institutional Level Review (signed by S. Sawyer on behalf of Omosaiye) or the Headquarters Level Review (signed on behalf of Gates) and plaintiff was reminded that "[w]hile you may not agree with the decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your health care needs." Id. Ex. D at 2.

On October 22, 2018, Dr. Munk saw plaintiff for a dental appointment after plaintiff submitted a health care services request for the TMD surgery recommended by Dr. Luque. Wu Decl. Ex. B at 36. Dr. Munk noted that the CT showed "decrease in the intra-articular space, flattening of the condylar heads and osteoarthritic changes" and that plaintiff continues to refuse a dental cleaning. Id. Dr. Munk again referred plaintiff's request for TMD surgery to the DAR Committee for consideration with the CT study. Id.

On November 16, 2018, plaintiff was seen by a dental assistant (DA) for "impressions of diagnostic casts" requested by Dr. Ng for the DAR Committee to consider in connection with Dr. Munk's referral of plaintiff's "request for a procedure outside of dental policy and procedure" – "TMJ surgery." Id. at 34.

On November 20, 2018, the DAR Committee reviewed plaintiff's renewed request for TMD surgery. Am. Ng Decl. ¶ 8; Ng Decl. Ex. A at 6. Because the committee previously had denied plaintiff's requested TMD surgery as not a covered benefit, it considered referring the case to the Dental Program Health Care Review Committee at the California Correctional Health Care Services (CCHCS) headquarters, colloquially referred to as the "Super DAR" Committee, for further review. Am. Ng Decl. ¶ 8; Ng Decl. Ex. A at 6. But before taking further action, Dr. Ng conferred with CDCR's Regional Director for dental services to confirm the DAR Committee's assessment that TMD surgery was not a covered benefit, and the Regional Director agreed. Am. Ng Decl. ¶ 9. The DAR Committee consequently denied plaintiff's request for TMD surgery and did not refer the case for further review. Id. The "Super DAR" Committee nonetheless eventually reviewed plaintiff's case in connection with one of his health care grievances and denied the request for TMD surgery. See Abernathy Decl. Ex. H.

On February 24, 2019, Plaintiff submitted a health care services request for treatment for his jaw pain. Wu Ex. B at 3.

On February 27, 2019, Dr. Chuapoco saw plaintiff for a limited dental exam and discussed his jaw pain. MPI Ex. S; Wu Decl. Ex. B at 32-33. Dr. Chuapoco reminded plaintiff that an occlusal guard could alleviate his jaw pain and bruxism (teeth grinding or clenching) but because he had refused treatment for over a year, he was overdue for a comprehensive dental exam which

6

was required prior to an occlusal guard "impression" and "fabrication." Id. at 33. Plaintiff complained that he was in too much pain to open his mouth for a comprehensive dental exam. Id.

On March 4, 2019, plaintiff filed a health care grievance demanding pain medication, a mouth guard and jaw surgery. Abernathy Ex. F at 3–4. Dr. Munk and Dr. Major, the chief dentist at SVSP, reviewed plaintiff's grievance for possible intervention and both found that no intervention was needed. See Wu Decl. Ex. B at 30, 31. They noted that plaintiff had been advised that he needed a comprehensive dental exam before a mouth guard could be fitted but had not scheduled an exam; plaintiff's request for TMD surgery had not been approved by the DAR Committee and was pending with the Super DAR Committee; and plaintiff had been referred to his primary care physician (PCP) for pain management because plaintiff currently was on a prescription for chronic pain by his PCP and dentists are not permitted to alter a patient's pain medication protocol prescribed by a medical doctor. See id. S. Rivera officially denied the grievance at the Institutional Level Review on May 7, 2019 based on the grounds noted by Drs. Munk and Major. Abernathy Ex. F at 5–6. Gates denied the grievance at the Headquarters Level Review on August 21, 2019. Id. at 1–2.

On March 20, 2019, Plaintiff filed another health care grievance claiming improper denial of treatment for his jaw pain. Abernathy Ex. G at 3–5. Rivera denied the grievance at the Institutional Level Review on May 29, 2019 on similar grounds as the denial of plaintiff's March 4, 2019 grievance. Id. at 7–8. Gates denied the grievance at the Headquarters Level Review on August 2, 2019. Id. at 1–2.

On August 30, 2019, Dr. Munk saw plaintiff to discuss plaintiff's dental treatment. Wu Decl. Ex. B at 29; Munk Decl. ¶ 32. Dr. Munk informed plaintiff that his request for TMD surgery had been denied by the Super DAR Committee but that he could be fitted for an occlusal guard after completing an overdue comprehensive exam, cleaning and fillings if necessary. Wu Decl. Ex. B at 29; Munk Decl. ¶¶ 32, 33. Plaintiff became agitated and was escorted out of the clinic by a correctional officer. Id. ¶ 33.

On September 7, 2019, plaintiff submitted a health care grievance challenging Dr. Munk's refusal to provide him a mouth guard before a deep cleaning and the DAR Committee's and Super

1   DAR Committee's denials of plaintiff's request for TMD surgery.  Id. Ex. H at 4–6.  Rivera

2   denied the grievance at the Institutional Level Review on November 7, 2019, and Gates denied it

3   at the Headquarters Level Review on January 27, 2020.  Abernathy Ex. H at 1–3, 8–10.

4           On September 11, 2019, plaintiff saw Dr. Munk for ongoing jaw pain.  Wu Decl. Ex. B at

5   27-28; Munk Decl. ¶ 34.  Plaintiff also complained that he was getting "no pain meds" and was

6   losing weight "due to the jaw pain."  Wu Decl. Ex. B at 28.  Dr. Munk informed plaintiff that, as

7   his treating dentist, he could not prescribe pain medication for chronic pain management and

8   advised him to consult with his PCP regarding pain management.  Munk Decl. ¶ 34.  Dr. Munk

9   also referred plaintiff to his PCP for further evaluation and treatment for his weight loss and a

10  possible referral to a dietitian.  Id. ¶ 35.  Dr. Munk again reminded plaintiff that an occlusal guard

11  could help alleviate his jaw pain, but he first needed to complete a comprehensive dental exam and

12  needed treatment, including a deep cleaning.  Id. ¶ 36.  Plaintiff again refused treatment.  Id.

13          On September 18, 2019, plaintiff's PCP prescribed him two cans per day of Boost, a liquid

14  nutritional supplement (LNS), and referred him to see a dietician.  Wu Decl. Ex. B at 63–65.

15          On December 8, 2019, plaintiff submitted a healthcare services request for TMD surgery

16  on the new ground that he had lost 30 pounds because he cannot chew due to jaw pain.  Id. at 2.

17          On December 16, 2019, plaintiff told Dr. Munk that he was no longer losing weight due to

18  the LNS prescription.  Id. at 24.  But Plaintiff's weight loss apparently resumed in early 2020

19  when his LNS prescription was modified to three times a day (one can of Boost with each meal)

20  and later increased to Boost High Calorie three times a day.  MPI Ex. O at 3.

**MOTION FOR SUMMARY JUDGMENT**

22          Defendants move for summary judgment on plaintiff's § 1983 and ADA and RA claims

23  under Rule 56 of the Federal Rules of Civil Procedure on the ground that there are no material

24  facts in dispute and that they are entitled to judgment as a matter of law.  They also claim that they

25  are entitled to qualified immunity on plaintiff's § 1983 claim.

26  A.   <u>Standard of Review</u>

27          Summary judgment is proper where the pleadings, discovery and affidavits show that there

28  is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, [as is the case here,] the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).  A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50.

B.     Claims

Plaintiff brings three federal claims for relief: (1) under 42 U.S.C. § 1983, that individual prison dentists have been deliberately indifferent to his jaw pain by failing to properly treat him for over two years and that individual reviewing/supervising officials similarly have been deliberately indifferent by denying his health care grievances and appeals and/or by failing to intervene; and (2) under ADA and (3) RA, that he has been excluded from prison services and

activities by reason of his eating impairment disability and that CDCR improperly has denied him the reasonable accommodation he requested to avoid exclusion on the basis of his disability.[3]

1. Deliberate Indifference to Serious Medical Needs

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t]" to a prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976).[4] A medical need is serious if failure to treat it will result in "significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citation and internal quotations omitted). A prison official is "deliberately indifferent" to that need if he "knows of and disregards an excessive risk to inmate health." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Neither negligence nor gross negligence is enough. Id. at 835–36 & n.4.

A difference of opinion between a prisoner and a physician concerning appropriate medical care does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled on other grounds by Peralta, 744 F.3d 1076; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another generally is insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004). To prevail on an Eighth Amendment deliberate indifference claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment that the doctor-defendants chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Id. at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

To prevail on a § 1983 claim for damages against an individual defendant, a prisoner-plaintiff must show that the defendant's deliberate indifference was the "actual and proximate cause" of the deprivation of plaintiff's Eighth Amendment rights. Leer v. Murphy, 844 F.2d 628,

---

[3] As noted earlier, plaintiff also invokes this court's supplemental jurisdiction under 28 U.S.C. § 1367 to bring related state law claims.

[4] Dental care is an important component of a prisoner's medical needs. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).

634 (9th Cir. 1988). The "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." Id. at 633.

Defendants argue that they are entitled to summary judgment on plaintiff's deliberate indifference to serious medical needs claims because plaintiff has been provided with medically acceptable treatment for his jaw pain and no individual defendant has consciously disregarded an excessive risk to plaintiff's health. They add that any injury suffered by plaintiff has been caused by his own refusal to accept the recommended treatment/care.

a. Drs. Chuapoco and Munk's Chosen Course of Treatment/Care

The evidence in the record shows that plaintiff suffers from TMD. But because TMD is not readily amenable to curative treatment, managing the symptoms of TMD frequently is the most effective course of care. California regulations have recognized the difficulty of treating TMD and prohibit curative treatments for TMD precisely because such treatments have a low chance of lasting success. See Cal. Code Regs. tit. 15, § 3999.200(b)(2)(A). The Ninth Circuit also has recognized that "[a] prison inmate . . . does not have a right to treatment for conditions that are not readily amenable to treatment, including TMJ." Amarir v. Hill, 243 Fed. Appx. 353, 354 (9th Cir. 2007) (citing Cal. Code. Regs. tit. 15, § 3350.1(a)(2)(B) (2007)). Prisoner-patients diagnosed with TMD generally are provided with palliative care to manage the symptoms of TMD. See, e.g., Amarir v. Hill, No. 04-cv-5290-CRB, 2006 WL 1530171, at *4 (N.D. Cal. June 2, 2006) (uncontroverted expert testimony provided that "TMJ is not readily amenable to treatment and that there is no evidence that treatment available off-site will treat TMJ more effectively than the nightguards and other care [(i.e., regular cleanings and scalings)] plaintiff is receiving [in prison]").

Here, after Drs. Chuapoco and Munk diagnosed plaintiff with TMD, they created a treatment plan for plaintiff that included the construction of a night guard to stabilize his bite and alleviate his TMD and bruxism/clenching symptoms, including his jaw pain. But because plaintiff also suffered from periodontitis, the treatment plan provides plaintiff with a deep cleaning to treat his periodontitis before fitting him with a night guard. Defendants correctly note that prioritizing

11

periodontal treatment before the construction of dental prostheses is consistent with CDCR policy and procedure and is based on sound medical justifications – periodontitis can cause debilitating bone loss or tooth loss if left untreated, and decay from periodontitis can change a person's bite and cause a mouth guard to no longer fit or be effective. Defendants consequently maintain that it was not medically unacceptable for Drs. Chuapoco and Munk to prioritize plaintiff's treatment for periodontitis over the construction of an occlusal guard. They add that they consistently have encouraged plaintiff to agree to a dental cleaning (and more recently also to a comprehensive dental exam) because a night guard may alleviate his jaw pain, but plaintiff consistently has refused and demanded that he be provided a night guard without a dental cleaning (or exam).

    Plaintiff has set forth no probative evidence that Drs. Chuapoco and Munk's treatment plan requiring that he undergo a dental cleaning before he is fitted for a night guard was medically unacceptable under the circumstances. See Toguchi, 391 F.3d at 1058. The evidence in the record instead shows that every dentist who has reviewed Drs. Chuapoco and Munk's treatment plan (including the dentists on the DAR Committee) has agreed with it. Plaintiff's preference for the construction of a night guard without first having to undergo a dental cleaning amounts to no more than a disagreement with his treating dentists as to how best to address his dental care and is not enough to support a deliberate indifference claim. See Snow, 681 F.3d at 987. His assertion that a dental cleaning would be too painful for him does not compel a different conclusion either. See Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (Constitution does not require prison doctors to "administer the least painful treatment"). After all, it is undisputed that plaintiff's treating dentists can provide local anesthetics to alleviate his pain and discomfort during a deep cleaning, see Munk Decl. ¶ 23, and/or schedule the deep cleaning over several sessions also to alleviate his pain and discomfort, see Chuapoco Decl. ¶ 10.[5]

---

[5] Plaintiff argues that defendants improperly required him to complete a dental cleaning before providing him an occlusal guard because when Dr. Chuapoco first examined him he had only mild periodontitis and HCDOM considers mild periodontitis in the same priority classification level as the need for an occlusal guard. But even if plaintiff's periodontitis in January 2018 was in the same priority classification level as his need for an occlusal guard, this does not mean that Dr. Chuapoco or Dr. Munk were required to provide plaintiff an occlusal guard before a dental cleaning or that their treatment plan prioritizing a dental cleaning over an occlusal guard was medically unacceptable under the circumstances. As noted earlier, prioritizing a dental

12

Defendants elected not to alter Drs. Chuapoco and Munk's chosen course of treatment/care for plaintiff and provide him with the jaw surgery that he requested because curative treatments such as surgery for TMD have a low chance of lasting success. Cf. Amarir, 243 Fed. Appx. at 354 ("[a] prison inmate . . . does not have a right to treatment for conditions that are not readily amenable to treatment, including TMJ") (citation omitted). Surgery also could worsen plaintiff's jaw pain. See Munk ¶ 10. Instead, plaintiff, like other prisoner-patients diagnosed with TMD, was provided with palliative care that included dental cleanings and occlusal guards to manage the symptoms of his TMD and bruxism/clenching.

Plaintiff has set forth no probative evidence that defendants' decision not to provide him with jaw surgery was medically unacceptable under the circumstances. See Toguchi, 391 F.3d at 1058. That Dr. Luque recommended possible surgery for plaintiff's jaw pain is not enough; it points only to a possible difference of opinion between medical professionals that does not support a claim of deliberate indifference. See id. at 1058, 1059-60. After all, this is not a case where a specialist recommended surgery for a prisoner-plaintiff as the only option for relief and the prisoner-plaintiff's correctional treating physicians agreed but their superiors denied surgery, see Snow, 681 F.3d at 987-88; here, Dr. Luque's recommendation of possible jaw surgery for plaintiff's jaw pain was reviewed by plaintiff's correctional treating dentists and by other correctional health care professionals (including those on the DAR Committee and the Super DAR Committee) and every one of them who reviewed it agreed that jaw surgery was not medically appropriate or necessary for plaintiff. As Dr. Ng noted in an email plaintiff oddly cites in support of his claim, "[t]here is no guarantee that [jaw surgery] will improve function or pain relief. In fact, the patient may be worse off." ECF No. 29-2 at 2. Plaintiff's preference for jaw surgery for possible pain relief does not compel a different conclusion. See Snow, 681 F.3d at 987.[6]

---

cleaning before the construction of an occlusal guard is based on sound medical justifications – periodontitis can cause debilitating bone loss or tooth loss if left untreated, and decay from periodontitis can change a person's bite and cause an occlusal guard to no longer fit or be effective.

[6] Plaintiff's assertion that he is entitled to jaw surgery because he does not have TMD but rather bone fragments that must be removed cannot be considered probative evidence that defendants' denial of jaw surgery was medically unacceptable. Plaintiff's personal disagreement

13

### b. Individual Defendants' Requisite State of Mind

Plaintiff has set forth no probative evidence that any individual defendant acted with conscious disregard of an excessive risk to his health. See Toguchi, 391 F.3d at 1058.

As to plaintiff's treating dentists, Dr. Chuapoco and Dr. Munk, the evidence shows that over the course of two years they attempted to alleviate plaintiff's TMD and bruxism/clenching symptoms but were repeatedly rebuffed by plaintiff because he disagreed with their recommended plan of treatment/care. Dr. Munk saw plaintiff on eleven separate occasions, and Dr. Chuapoco saw plaintiff on two separate occasions, between February 2018 and December 2019, and on each occasion informed or reminded plaintiff that an occlusal guard could alleviate his pain and that one could be constructed for him as soon as he completed a dental cleaning. But each time plaintiff refused treatment, either because he did not want to complete a dental cleaning or because he wanted jaw surgery only. Dr. Munk even presented plaintiff's demands to the DAR Committee for consideration despite knowing that they would almost certainly be denied. The evidence in the record does not show that either Dr. Chuapoco or Dr. Munk knowingly disregarded an excessive risk to plaintiff's health. See Farmer, 511 U.S. at 837.[7]

As to Dr. Major and Dr. Ng, supervising dentists who reviewed plaintiff's health care grievances and requests before the DAR Committee, the evidence does not show that either of them knowingly disregarded an excessive risk to plaintiff's health. See id. Dr. Major's only interaction with plaintiff's treatment was his April 8, 2019 review and rejection of plaintiff's request for jaw surgery and pain medication. Dr. Major determined that no intervention was

---

with the TMD diagnosis of every dental/medical professional who has treated or reviewed his case (including Dr. Luque) does not support a claim of deliberate indifference. See Snow, 681 F.3d at 987. Nor does his apparent personal disagreement with their professional opinions that jaw surgery for plaintiff is neither medically appropriate nor necessary. See id.

[7] Plaintiff claims that Dr. Munk was deliberately indifferent to his serious medical needs by referring him to his PCP for pain medication and nutritional supplements rather than prescribing them himself. But as a dentist treating a prisoner-patient with multiple medical conditions and under multiple medications prescribed by medical doctors (including medication for chronic pain management), Dr. Munk cannot be said to have knowingly disregarded an excessive risk to plaintiff's health by referring plaintiff to his PCP for pain medication and nutritional supplements to address his weight loss. See Farmer, 511 U.S. at 837. Dr. Munk was prudent, not deliberately indifferent, and plaintiff received pain medication and nutritional supplements from his PCP and a registered dietician without significant delay.

14

needed because plaintiff's request for jaw surgery already had been denied by the DAR Committee and plaintiff already had been referred to his PCP for pain management because plaintiff was on a prescription for chronic pain by his PCP and dentists are not permitted to alter a patient's pain medication protocol prescribed by a medical doctor.  See Wu Decl. Ex. B at 30.  Dr. Major's response to plaintiff's request cannot be said to have amounted to a knowing disregard of an excessive risk to plaintiff's health.  After all, there is no probative evidence on the record that jaw surgery was medically appropriate and necessary for plaintiff's jaw pain and that Drs. Chuapoco and Munk's recommended course of treatment/care (namely construction and use of an occlusal guard after a dental cleaning) was medically unacceptable.

Dr. Ng's only interaction with plaintiff's treatment was as a reviewer on the DAR Committee that denied plaintiff's request for jaw surgery.  But there is no probative evidence that Dr. Ng consciously disregarded an excessive risk to plaintiff's health as a member of the decision-making committee that denied plaintiff's request for jaw surgery.  The record instead shows that Dr. Ng considered the request carefully and even reached out to CDCR's Regional Director for dental services to confirm whether jaw surgery for plaintiff was medically appropriate.  Regardless, there is no probative evidence that jaw surgery was medically appropriate and necessary for plaintiff's jaw pain and that Drs. Chuapoco and Munk's recommended course of treatment/care was medically unacceptable.

As to the named defendants who reviewed plaintiff's health care grievance appeals, Sawyer, Gates, Caldwell, Jemison, Omosaiye and Rivera, the evidence does not show that any of them knowingly disregarded an excessive risk to plaintiff's health.  See Farmer, 511 U.S. at 837.  As non-dentist administrative reviewers, these defendants' role was limited to "ensuring that the proper personnel had signed off on a reasonable course of treatment, not second guessing staff dentists' medical judgments." Peralta, 744 F.3d at 1086.  Consequently, their decisions "to sign appeals that [they] knew had already been reviewed by . . . qualified dentists, when [they] had no expertise to contribute to that review, isn't a wanton infliction of unnecessary pain." Id. at 1087.  Nor can it be when there is no probative evidence that jaw surgery was medically appropriate and necessary and that the recommended course of treatment/care was medically unacceptable.

Plaintiff finally names Warden Atchley as an individual defendant in connection with his claim of deliberate indifference. But plaintiff sets forth no probative evidence that Atchley was involved in any way with his dental treatment/care or appeals, much less that Atchley knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. And it's well established that a warden or supervisor cannot be held liable under § 1983 solely because he or she is responsible for the actions or omissions of another. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In sum, the individual defendants that plaintiff names in connection with his claim of deliberate indifference under § 1983 are entitled to summary judgment because plaintiff has set forth no probative evidence that any of them knew of and disregarded an excessive risk to plaintiff's health. See Farmer, 511 U.S. at 837. Plaintiff's continued disagreement with the chosen course of treatment for his jaw pain (construction and use of an occlusal guard after a dental cleaning), and continued refusal of treatment unless he is provided his preferred course of treatment (occlusal guard without a dental cleaning and jaw surgery), although unfortunate, does not alter the fact that there is no probative evidence that the chosen course of treatment/care was (or is) medically unacceptable under the circumstances and that this course was chosen in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058.[8]

2.     ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although Title II of the ADA does not expressly provide for reasonable

---

[8] The individual dentist-defendants (Drs. Chuapoco, Munk, Major and Ng) also are entitled to qualified immunity from damages because a reasonable prison health care provider could have believed that his or her conduct – choosing/approving a course of treatment for plaintiff's jaw pain comprised of construction and use of an occlusal guard after a dental cleaning and not jaw surgery – was lawful under the circumstances. See Saucier, 533 U.S. 194, 201-02 (2001). And the appeals reviewer-defendants (Sawyer, Gates, Caldwell, Jemison, Omosaiye and Rivera) similarly are entitled to qualified immunity from damages because a reasonable prison appeals reviewer could have believed that his or her conduct – denying plaintiff's appeals concerning his treating dentists' chosen course of treatment for his jaw pain after a correctional dentist reviewed and denied the grievance – was lawful under the circumstances. See id.

accommodations, the "reasonable modification" provision of the regulations implementing Title II of the ADA requires that a public entity "'shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination <u>on the basis of disability</u>, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" <u>Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.</u>, 114 F.3d 976, 979 (9th Cir. 1997) (quoting 28 C.F.R. § 35.130(b)(7)) (emphasis in original). The duty to provide "reasonable accommodations" (or "reasonable modifications") under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. <u>Id.</u> at 979.

Plaintiff claims that he has been excluded from prison services and activities by reason of the eating impairment disability he suffers due to his jaw pain and that CDCR improperly has denied him the reasonable accommodation he requested to avoid exclusion on the basis of his eating impairment disability. Plaintiff specifically claims that he cannot participate in CDCR-provided meals because SVSP does not provide a soft-food program and that he cannot participate in CDCR-provided exercise and recreational activities because he is too weak from not being able to eat regular meals, and that CDCR improperly has denied him the jaw surgery and occlusal guard without a dental cleaning he requested as a reasonable accommodation to avoid exclusion on the basis of his disability. Plaintiff seeks damages and injunctive relief under Title II of the ADA in the form of an order compelling CDCR to provide him jaw surgery and an occlusal guard without a dental cleaning.[9]

Although cast in a different framework than his § 1983 deliberate indifference claim, plaintiff's ADA claim similarly is based on his continued disagreement with the course of treatment/care that his correctional dentists have chosen for his jaw pain. And he seeks under the ADA, as he does under § 1983, the same jaw surgery and occlusal guard without a dental cleaning that correctional dentists specifically have rejected as an appropriate treatment plan. This will not

---

[9] In his deposition, plaintiff summarized his claim as follows, "I believe I am being discriminated against in my eating impairment because they're not providing me with the reasonable accommodation of jaw surgery, for a treatment, including the occlusal guard, which I am told would relieve my eating impairment." Wu Decl. Ex. C at 58.

17

do because courts repeatedly have held that an ADA claim cannot be based on medical/dental treatment decisions. See Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005); see also Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (RA, like ADA, was never intended to apply to decisions involving medical treatment); Fitzgerald v. Corr. Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005) (prisoner's claims under RA and ADA properly dismissed for failure to state claim because they were based on medical treatment decisions). Moreover, the accommodation that plaintiff seeks – jaw surgery and an occlusal guard without dental cleaning – is not a reasonable accommodation to avoid exclusion from CDCR's meals program and/or exercise and recreational activities based on plaintiff's eating disorder disability, but rather a specific medical/dental treatment for the jaw pain causing plaintiff's eating disorder disability that plaintiff's dentists have rejected for legitimate medical reasons and which CDCR properly rejected as not a reasonable accommodation to avoid exclusion from the meals program and/or exercise and recreational activities. See Weinreich, 114 F.3d at 979.[10] Defendants are entitled to summary judgment on plaintiff's ADA claim against CDCR.

3.  RA

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). Apart from the additional requirement that the "program or activity" in question must receive federal money, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citation omitted). For the same reasons that defendants are entitled to summary judgment on plaintiff's ADA claim against CDCR, they are entitled to summary

---

[10] There is no evidence that plaintiff sought from CDCR (or any other defendant) any accommodation for his eating disorder other than jaw surgery and an occlusal guard without a dental cleaning. But the record does show that when plaintiff complained to his treating dentist that he was losing weight because he could not eat solid food, he was referred to his PCP and a dietitian who then provided him a LNS prescription.

judgment on plaintiff's RA claim against CDCR.[11]

## MOTION FOR PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). If "the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits.'" HiQ Labs, Inc. v. LinkedIn Corp., 938 F.3d 985, 992 (9th Cir. 2019) (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Plaintiff moves for a preliminary injunction requiring defendants to provide him jaw surgery and an occlusal guard without a dental cleaning. Because plaintiff is not likely to succeed on the merits (and has not presented serious questions going to the merits) in view of the court's conclusion that defendants are entitled to summary judgment, the motion for a preliminary injunction will be denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 20 (21-2)) is GRANTED and plaintiff's motion for a preliminary injunction (ECF No. 16) is DENIED.

**IT IS SO ORDERED**.

Dated: September 28, 2021

CHARLES R. BREYER
United States District Judge

---

[11] Plaintiff's remaining related state law claims are dismissed under the authority of 28 U.S.C. § 1367(c)(3). See Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001) (court may decline supplemental jurisdiction over related state law claims under § 1367(c)(3) once it has dismissed all claims over which it has original jurisdiction); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (although discretionary, claims under state law should be dismissed when associated federal claims are dismissed before trial). The dismissal of course is without prejudice to proceeding with the state law claims in state court. See Reynolds v. Cnty. Of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (dismissal of pendent state law claims following dismissal of related federal claims must be without prejudice).